# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-363


# IN THE MATTER OF INSPIRATIONAL ENTERPRISES APPLYING FOR

# MONITION



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 251,843
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and Shannon J. Gremillion, Judges.


**REVERSED AND REMANDED.**

**Kelvin G. Sanders**
**Attorney at Law**
**418 Desoto Street**
**Alexandria, LA 71315-3922**
**(318) 613-8112**
**COUNSEL FOR APPELLANT:**
     **Edwin A. Humphrey**

**Michael P. Glorioso**
**Inspirational Enterprises, LLC**
**158 Wakeland Drive**
**Pineville, LA 71360**
**(318) 201-6453**
**APPELLEE**
**IN PROPER PERSON:**
     **Inspirational Enterprises, LLC**

**GREMILLION, Judge.**

Appellant, Edwin A. Humphrey (Edwin), appeals the monition granted in favor of Inspirational Enterprises, LLC (IE). For the reasons that follow, we reverse and remand to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

IE purchased Lots 53 and 60 of the George Moore Subdivision in Alexandria, Louisiana, from BBCP Investments, Inc. (BBCP), on April 30, 2009. BBCP had purchased the properties from the Rapides Parish Sheriff on May 4, 2005, to satisfy unpaid ad valorem taxes for 2004. On January 7, 2015, IE filed a petition for monition and requested service upon Edwin and his brother, Marvin. Edwin filed an answer and asserted therein that he had received no pre-sale notice of the tax sale. The trial court set the matter for trial on July 20, 2016.

Counsel for IE had sent notice to both Edwin and Marvin Humphrey at the same address, 3740 Payne Street, Alexandria, Louisiana, on September 16, 2014.[1] The correspondence was addressed to Edwin, but the United States Postal Service Form 3811, Domestic Return Receipt, was returned "unclaimed."

The Humphrey brothers jointly purchased lots 53 and 60 of the George Moore Subdivision in September 2000. Edwin took care of the parish taxes for 2001 through 2003. However, one year he was late paying city ad valorem taxes and received notice of that delinquency. He was under the impression thereafter that, if he paid his city taxes, he would owe no parish taxes. A Domestic Return Receipt was introduced into evidence for which Marvin signed on May 18, 2005, which demonstrated Marvin's receipt of a letter from BBCP, dated May 12, 2005, informing him of the fact that BBCP had purchased to property at tax sale.

---

[1] 3740 Payne Street is the physical address of lots 53 and 60 of the George Moore Subdivision.

Edwin testified that Marvin is mentally disabled, has not worked in over thirty years, and currently resides in a mental institution in New Orleans. When Edwin was working as a barber, Marvin would be picked up by various adult mental health agencies to participate in day activities and returned home in the evenings.

Edwin was contacted by a Mr. Bayonne who told him that Mr. Michael Glorioso, the sole member of IE, was "trying to take [his] property." He was also contacted by Mr. D.J. Collins, who told him the same thing.

The next information Edwin received regarding the property was when he was served with the petition in the present matter. Edwin consulted an attorney but made no attempt to redeem the property, because he was not certain he owed the taxes.

Nothing in the evidence demonstrated that Edwin was notified of the tax sale before he was served with the petition in the present matter. IE argued that, pursuant to La.R.S. 47:2121, Edwin had sixty days thereafter to file a petition to nullify the tax sale and failed to do so; therefore, lack of notice of the tax sale was foreclosed to him as a defense to the monition.

Initially, the trial court ruled that the lack of notice to Edwin was fatal to the tax sale. However, IE's counsel argued that La.R.S. 47:2157[2] required Edwin to file an action for nullity, which he failed to do; therefore, deficiency in the notice of the tax sale was cured by the notice provided by IE to Edwin when he was served with the petition. The trial court then rendered judgment in favor of IE.

---

[2] Louisiana Revised Statutes 47:2157 reads, in pertinent part:

A. (1) Upon the expiration of the applicable redemptive period, the tax sale purchaser may send a notice to a tax sale party whose interest the tax sale purchaser intends to terminate that the party has until the later of:

(a) Sixty days after the date of the notice provided in this Subsection, if five years have elapsed from the filing of the tax sale certificate to challenge, in a court of competent jurisdiction, the tax sale.

(b) Six months after the date of the notice if five years have not elapsed from the filing of the tax sale certificate, to challenge, in a court of competent jurisdiction, the tax sale.

Judgment granting IE's monition and conferring ownership of the property on IE was signed on November 17, 2016. Edwin thereafter perfected this appeal. He argues that the trial court erred in granting the monition and declaring IE the owner of the property.

## ANALYSIS

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition [under the Due Process Clause of the Fourteenth Amendment] to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712 (1983).

In *Lewis v. Succession of Johnson*, 05-1192 (La. 4/4/06), 925 So.2d 1172, the supreme court held invalid a tax sale, the notice of which had been sent and unclaimed on three occasions to only one co-owner of the property sold. In 2005, when lots 53 and 60 were sold at tax sale, La.R.S. 47:2180(A) required the tax collector to address notice of delinquent taxes to "each taxpayer," just as it did when *Lewis* was decided.[3] The supreme court in *Lewis* held that "each taxpayer" meant every co-owner. The *Lewis* holding was affirmed by the supreme court in *C&C Energy, L.L.C. v. Cody Invs., L.L.C.*, 09-2160 (La. 7/6/10), 41 So.3d 1134, which extended the *Lewis* holding to include the notion that the constitutional infirmity applies even to co-owners who did receive notice. *Lewis* requires the sheriff, as the *ex officio* tax collector for the parish, to take additional reasonable steps to notify the delinquent taxpayers. No evidence was introduced in this matter to demonstrate that even Marvin had been sent notice of the pending tax sale.

---

[3] With the enactment of 2008 La. Acts No. 819, § 2, the legislature repealed La.R.S. 47:2180 and changed the requirements for tax delinquency notices, effective January 1, 2009. However, our courts have long recognized that the language of the law in effect at the time of the 2004 tax sale still controls, as it did in *Lewis*.

Recently, the Louisiana Supreme Court decided the case of *Central Props. v. Fairway Gardenhomes, LLC*, 16-1855, 16-1946 (La. 6/27/17), ___ So.3d ___, which held that post-sale notice to the taxpayer by the purchaser satisfied the statutory requirement that an interested party be notified of the tax sale. This holding, however, only addresses the relative nullity created by the failure of the tax collector to provide *post-sale* notice to the taxpayer as opposed to the absolute nullity created by the failure to provide *pre-sale* notice under *Lewis*. *See Smitko v. Gulf South Shrimp, Inc.*, 11-2566 (La. 7/2/12), 94 So.3d 750

IE also argued that La.Const. art. VII, § 25 and La.R.S. 47:2157 foreclose Edwin's right to argue the nullity of the sale. We disagree. Article VII, § 25(C) reads:

> **(C) Annulment.** No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.

Article VII, § 25(C) does not supersede the Due Process Clause, U.S. Const. amend. XIV, § 1. *See* U.S. Const. art. VI, cl. 2. In *Smitko*, 94 So.3d 750, our supreme court held that the failure to notify the owner of tax delinquency or of an impending tax sale renders the tax sale absolutely null. An absolute nullity has no legal effect; therefore, the limitation imposed by La.Const. art. VII, § 25, does not preclude an owner from asserting the absolute nullity of a tax sale.

We recognize that our holding places IE in an uncomfortable predicament. It has paid taxes levied against property over which it holds an absolutely null title. Were the record sufficient to establish a solid foundation for this court to fashion a remedy, we would do so under our authority granted by La.Code Civ.P. art. 2164. The record in this matter does not provide us with such a foundation, though, so we remand the matter to the trial court for proceedings consistent with this opinion. All costs of this appeal are assessed to Appellee, Inspirational Enterprises, LLC.

**REVERSED AND REMANDED.**